

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### LUFKIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **SHIELDCOAT TECHNOLOGIES, INC.** | § | Case No. 25-90067 |
| xx-xxx8496 | § | |
| PO BOX 155225 | § | |
| Lufkin, TX 75915-5225 | § | |
| Debtor | § | Chapter 11 – Subch. V |

**ORDER CONFIRMING DEBTOR'S**
**PLAN OF REORGANIZATION UNDER 11 U.S.C. § 1191(b)**
**(Nonconsensual)**

On September 9, 2025, the Court held a hearing (the "Confirmation Hearing") to consider confirmation of the First Amended Plan of Reorganization for a Small Business under Subchapter V of Chapter 11 (the "Plan")[1] filed herein by Shieldcoat Technologies, Inc. (the "Debtor") on September 5, 2025 (Docket No. 100). Present or making appearances at the hearing were counsel for the Debtor, the Debtor's representative, Bobby Marshall, the Subchapter V Trustee appointed in the case (hereinafter "Sub V Trustee"), counsel for certain creditors who have entered an appearance in the case, and the United States Trustee. The Court has reviewed the Plan, considered the documents admitted into evidence and the testimony of witnesses present at the hearing, considered the statements and arguments of counsel, the docket of the Bankruptcy Case, and considered any other relevant factors affecting the case as set forth on the record.

**Based upon the foregoing, the Court finds and determines as follows:**

A.      The Debtor filed this case on March 7, 2025 (the "Petition Date"), and was qualified to be a Debtor under 11 U.S.C. § 109. The Debtor was also qualified and elected to proceed as a small business debtor under Subchapter V of the Bankruptcy Code as that term is defined by 11 U.S.C. § 1182(1).

---

[1] Capitalized terms used herein without definition shall have the meanings provided for in the Plan. In addition, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

2

B.      This Court has jurisdiction over the Case pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and whether it should be confirmed. Venue in the Eastern District of Texas was proper on the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.

C.      Every person or entity required to receive notice of the hearing on confirmation of the Plan, as well as the Plan voting and Plan objection deadlines set by the Court, received timely and adequate notice as required by the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002 and 9014 and the Bankruptcy Code.

D.      The contents of the Plan (with any modifications as set forth below) satisfy the applicable requirements of 11 U.S.C. § 1190 and any other applicable requirements of the Bankruptcy Code.

E.      The Plan (with any modifications as set forth below) and the Debtor have satisfied all applicable requirements for confirmation of the Plan under 11 U.S.C. § 1129(a), except for 11 U.S.C. § 1129(a)(8) and/or 1129(a)(10). Thus, the Plan cannot be confirmed under 11 U.S.C. § 1191(a). However, the Plan can and should be confirmed under 11 U.S.C. § 1191(b), as the Plan (with any modifications as set forth below) does not discriminate unfairly and is fair and equitable with respect to each impaired class of claims and interests that have not accepted the Plan as required by 11 U.S.C. § 1191(c).

F.      The Plan (with any modifications as set forth below) and the Debtor have satisfied all other requirements of the Bankruptcy Code and Bankruptcy Rules necessary to confirm the Plan.

3

G.     The Court specifically finds that there is cause under 11 U.S.C. § 1194(b) for the

Debtor to serve as the Disbursing Agent under the Plan.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AS FOLLOWS:**

1.     The First Amended Plan of Reorganization for a Small Business under Subchapter

V of Chapter 11 filed by the Debtor on September 9, 2025 (Docket No. 100) and attached hereto

as **Exhibit A**, is hereby **CONFIRMED** and approved in each and every respect as a non-

consensual plan pursuant to 11 U.S.C. § 1191(b), with the modifications set forth below. The terms

of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

2.     To the extent any objections to confirmation of the Plan have not been resolved or

withdrawn, any such objections are hereby denied.

3.     The effective date of the Plan shall be October 9, 2025 ("Effective Date"),

notwithstanding anything to the contrary in the Plan

4.     Except as expressly stated in the Plan, in the event of a conflict between the

provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall

control.

5.     Within three (3) days after the Effective Date, the Debtor shall serve notice of (i)

entry of this Confirmation Order; (ii) the occurrence of the Effective Date; and (iii) any bar dates

and any other deadlines set by the Plan ("Notice"), pursuant to Bankruptcy Rule 3020(c). The

Notice shall be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The

Debtor shall thereafter promptly file a copy of such Notice with proof of mailing with the Court.

4

6.      The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are, as of the Effective Date, effective and binding on the Debtor, all creditors of the Debtor, and any other parties-in-interest, as well as their respective heirs, successors, assigns, or other persons claiming through them. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

7.      The Debtor shall make the payments to creditors required by the Plan under 11 U.S.C. § 1194(b) ("Disbursing Agent").

8.      Except as otherwise provided in the Plan, no distributions will be made with respect to a disputed claim until the resolution of such dispute by settlement or final order. The provisions of this section are not intended to restrict payment of any allowed claims which are not disputed. Until a disputed claim is resolved, the Disbursing Agent shall hold any portion of plan payments that would be disbursed to the claimant if the claim were allowed in full, subject to a final resolution of the disputed claim. Upon resolution in favor of the allowed claim, the Disbursing Agent will distribute withheld funds to the claimant within the next payment period. If the disputed claim is disallowed, the Disbursing Agent will make withheld funds available to allowed claim holders in accordance with the terms of the Plan within the next payment period.

5

9.       If any distribution to a claimant of an allowed unsecured claim is returned to the

Disbursing Agent as undeliverable, no further distributions shall be made to such claimant unless

and until the Disbursing Agent is notified in writing of such claimant's correct mailing address, at

which time all currently due distributions shall be made to such claimant as soon as practicable.

Undeliverable distributions shall remain in the possession of the Disbursing Agent until such time

as a distribution becomes deliverable and shall not be supplemented with any interest, dividends,

or other accruals of any kind. If, despite reasonable effort, the Disbursing Agent is unable to obtain

the information necessary to deliver a distribution within six (6) months following the return of

the undeliverable distribution, the Disbursing Agent shall deposit the amount with the Clerk of the

Court in accordance with 11 U.S.C. § 347(a).

10.      The Debtor and its respective agents and attorneys are hereby authorized,

empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute

and deliver the documents as are necessary or appropriate in connection with the Plan and this

Order.

11.      Except as expressly stated in the Plan, nothing in this Confirmation Order or the

Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect

any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy

Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor

shall retain such claims as provided in the Plan, including any claims or defenses that may not

have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective

Date. After the Effective Date, the Debtor may, in accordance with the terms of the Plan, evaluate

and determine whether to pursue any such retained claims.

6

12.     Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known mailing address.

13.     The Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

14.     The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

15.     Except as expressly stated in the Plan, all property of the estate shall remain vested in the estate until the Debtor completes all the payments under the Plan and a discharge is entered herein. In addition, property of the estate shall include all property identified in 11 U.S.C. § 1186.

16.     This Confirmation Order is a final order and effective and enforceable immediately upon entry and the period in which an appeal must be filed shall commence upon the entry hereof.

17.     The services of Subchapter V Trustee are terminated and Subchapter V Trustee is authorized to file his Report of No Distribution.

18.     The following non-material modifications are approved:

a.   Paragraph VIII.E is revised as follows:

Except as otherwise provided by the terms of the Plan, upon the Effective Date, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan against the

7

Debtor.   Additionally, except as otherwise provided by the terms of the Plan, all holders of Claims, all holders of Equity Interest, and all other parties in interest in the Bankruptcy Case shall be enjoined from seeking payment from the Debtor on their Claims or Interest except as otherwise provided in the Plan.

b.   Claim 2-2 for the Texas Comptroller of Public Account is modified as follows:

Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtors or Reorganized Debtors, from any liability owed to the Texas Comptroller of Public Accounts for a tax debt, including interest and penalties on such tax.   This provision is not admission by any party that such liability exists.

Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Comptroller's setoff rights under 11 U.S.C. § 553.   This provision is not admission by any party that such setoff rights exist.

A failure by the reorganized Debtors to make a payment to the Comptroller pursuant to the terms of the Plan shall be an Event of Default.   Subject to the terms in the Plan, if the reorganized Debtors fail to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Comptroller, the Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court.   Notice of the default shall be served by first class mail upon the Debtor: 308 Ellen Trout Dr., Lufkin, TX  75904, Attn Chief Executive Officer, and upon Debtor's attorney at:   The

8

Lane Law Firm, PLLC, 6200 Savoy Dr., Suite 1150, Houston, TX   77036,

Attn:   Robert C. Lane, Esq.; chip.lane@lanelaw.com.

The Debtors shall be allowed to cure up to two (2) defaults.   Upon a third default,

the Comptroller, at its option, may declare the default non-cureable and proceed to

collect the remainder of the debt

c.   **De Minimis Distributions:** No distribution of less than $100 shall be made by the

Disbursing Agent. Any distribution less than $100 shall be held until a time in

which the distribution exceeds $100, at which time the Disbursing Agent shall make

such distribution. At the time of any final distribution, the Disbursing Agent shall

not issue a distribution less than $100. Any amounts due to Holders of Allowed

Claims of less than $100 shall revest in the Estate, for pro-rata distribution to the

Class 6 unsecured creditors.

# # #

Signed on 10/3/2025

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **SHIELDCOAT TECHNOLOGIES, INC.** | § | Case No. 25-90067 |
| XX-XXX8496 | § | |
| PO BOX 155225 | § | |
| Lufkin, TX 75915-5225 | § | |
| Debtor | § | Chapter 11 – Subch. V |

## DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE

TO: ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

### ARTICLE I
### INTRODUCTION

#### Identity of the Debtor

Shieldcoat Technologies, Inc. ("Debtor") filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Texas, Lufkin Division on March 7, 2025. The Debtor manages and operates a contract manufacturing for medical, defense and electronics industry business. This Plan proposes to pay creditors from future income by continuing operations and reorganizing its current debts.

The Plan also states whether each class of claims or equity interest holders is impaired or unimpaired. After such plan has been filed, it must be accepted by holders of claims against, or interests in, the Debtor, or be found by the Court to be fair and equitable with respect to each class of claims or interests.

#### Explanation of Chapter 11

Chapter 11 is the primary reorganization chapter under the Code. Debtor is a small business and has decided to proceed under Subchapter V – Business Debtor Reorganization ("Subchapter V"). Under Subchapter V, the Debtor are permitted to reorganize their businesses for the benefit of their creditors, equity interest holders, and themselves. As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. After such Plan has been filed, it must be accepted by claimholders and equity interest holders or determined by the Court to be fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

1

EXHIBIT A

**Explanation of the Confirmation Process**

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the Debtor vote in favor of the plan to be confirmed by the Court.

Confirmation of the plan discharges the Debtor from all their pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the Debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether they have accepted the plan.

**Voting Procedures**

**Unimpaired Class**.  Claimants in Class 1, 2 3 and 8 are not impaired under the Plan.  Such Classes are deemed to have accepted the Plan.

**Impaired Class**.  The Class 4, 5, 6 and 7 Claimants are impaired as defined by Section 1124 of the Code.  The Debtor is seeking the acceptance of the Plan by Claimants in Class 4, 5, 6 and 7.  Each holder of an Allowed Claim in Class 4, 5, 6 and 7 may vote on the Plan by completing, dating, and signing the ballot sent to the holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Robert "Chip" Lane, The Lane Law Firm, PLLC, 6200 Savoy Drive, Suite 1150, Houston, Texas 77036 or via email at bk@lanelaw.com.  To be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

**IF A CLAIMANT IS ENTITLED TO VOTE AND FAILS TO TIMELY RETURN A BALLOT ACCORDING TO THE PROCEDURES OUTLINED IN THIS PLAN, THAT CLAIMANT'S VOTE OR CLASS MAY BE DISREGARDED FOR PURPOSES OF DETERMINING THAT CLASS' ACCEPTANCE OF THE PLAN.**

2

## Summary of Plan

Debtor's Plan of Reorganization provides for the continued operations of the Debtor to make payments to their creditors as set forth in this Plan. The Debtor seeks to confirm a consensual plan of reorganization so that all payments to creditors required under the Plan will be made directly by the Debtor to their creditors.

If the Debtor must seek confirmation of this Plan pursuant to §1191(b), then Debtor asserts that cause exists to allow the Debtor to make all Plan payments as this will reduce administrative costs and provide assurance the Debtor are better able to monitor and maintain their cash flows.

## Best Interests of Creditor Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the property that secures such claims. For the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor' creditors. Accordingly, the proposed Plan must provide the Debtor' creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor' creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE II
## DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan, which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.    **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

3

2.    **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3.    **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C.
§506(a).

4.    **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5.    **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6.    **"Case"** shall mean this Chapter 11 case.

7.    **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause

4

of action based on a pre-petition monetary or non-monetary default.

8.      **"Claimant"** shall mean the holder of a Claim.

9.      **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10.     **"CFP"** shall mean Commercial Finance Partners, L.L.C.

11.     **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

12.     **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

13.     **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

14.     **"Court"** shall mean the United States Bankruptcy Court for the Eastern District of Texas, Lufkin Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

15.     **"Creditor"** shall mean any person having a Claim against Debtor.

16.     **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

17.     **"Debtor"** shall mean Shieldcoat Technologies, Inc.

18.     **"Disbursing Agent"** shall mean the Reorganized Debtor or in the event of a confirmation under 11 U.S.C. §1191(b) shall mean the Sub-Chapter V Trustee or other entity or person as the Court mandates.

19.     **"Effective Date"** The effective date of this Plan is 30 days after the "Confirmation Date".

20.     **"Entity"** shall include Person, estate trust, and governmental unit.

21.     **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtor.**Factoring Agreement"** shall mean the Agreement between the Debtor and Commercial Finance Partners, L.L.C. dated on or about June 14, 2024.

22.     *"**Final DIP Financing Order**" shall mean the Final Order Approving Debtor's Emergency Motion for (I) Interim (and Final) Approval of a Pre-Petition Master Purchase and Sales Agreement, as Revised, with Commercial Finance Partners, L.L.C. and (II) Interim (and final) Approval of Debtor-in-Possession*

5

*Financing and Adequate Protection dated April 8, 2025* (D.E. 57).

23.

24.    **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

25.    **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, March 7, 2025.

26.    **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified, or supplemented.

27.    <u>**Post-Petition Agreements** shall mean the Factoring Agreement as amended by the Post-Petition Chapter 11 Bankruptcy Rider to Master Purchase and Sales Agreement between CFP and the Debtor.</u>

28.    **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

29.    **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

30.    **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtor' assets and liabilities upon confirmation as provided herein.

31.    **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506.

32.    **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

33.    **"Substantial Consummation"** shall occur upon Reorganized Debtor' commencement of payments to creditors as provided in this Plan.

34.    **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property

6

retained by the Debtor under this Plan.

35.    **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.


# ARTICLE III
## REPRESENTATIONS

NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMEND THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVE THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR' ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DO NOT WARRANT OR REPRESENT THAT THE INFORMATION

CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE
TO BE ACCURATE.  THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS
OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE IV
## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

Shieldcoat Technologies, Inc. started operations in February 2004. Shieldcoat
Technologies, Inc. operates a contract manufacturing for medical, defense and electronics industry
business. Shieldcoat Technologies, Inc. elected to file a chapter 11 reorganization as the best
means to resolve the current liabilities of the company and determine the secured portions of those
creditors.

### Future Income and Expenses Under the Plan

The Debtor filed this case on March 7, 2025. Debtor proposes to pay allowed unsecured
based on the liquidation analysis and cash available.  Debtor anticipates having enough business
and cash available to fund the plan and pay the creditors pursuant to the proposed plan.  Attached
hereto as Exhibit "B" are projections of gross income, expenses, and operating income for the next
five years.  It is anticipated that after confirmation, the Debtor will continue in business.  Based
upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned 100% by Bobby Marshall. The ownership will remain
unchanged following confirmation.

## ARTICLE V
## ANALYSIS AND VALUATION OF PROPERTY

The Debtor manages and operates a contract manufacturing for medical, defense and
electronics industry business.  Shieldcoat Technologies, Inc.'s assets include its cash on hand,
inventory, office supplies/furniture, machinery and equipment.  There are fully secured creditors
as to this property based on the liquidation analysis and UCC filings.  Any secured creditor not
treated in this Plan as fully secured are therefore under secured.

A liquidation analysis of the Debtor' assets is attached hereto as Exhibit "A".

# ARTICLE VI
# MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor will continue operating the businesses. The Debtor's Plan will break the existing claims into nine classes of Claimants. These claimants will receive cash repayments over a period of time beginning on or after the Effective Date.

**Satisfaction of Claims and Debts:** The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole and exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities, and obligations for the implementation of this Plan.

**Class 1 Claimants Allowed Administrative Claims of Professionals and Subchapter V Trustee (These claims are unimpaired)** These claims will be paid in full within 60 days of the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to The Lane Law Firm, PLLC will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor' case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $45,000.00. The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimant Priority Tax Claims (This Claim is unimpaired)** Allowed Priority Claims are for estimated tax returns. This claim is secured, and the amounts are based on estimated returns and will be paid on the effective date as to the actual amount owed. The following class contains Debtor's estimated tax priority claim for pre-petition estimated amounts and the proposed treatment under the Plan:

**2-1 Texas Health and Human Services Commission filed a claim** in the amount of **$298.00 (Claim No. 14-1).** The claim was filed for the Radiation License and will be paid in full on or before the Effective Date of the Plan.

**2-2 Texas Comptroller of Public Accounts filed a claim** in the amount of **$13,376.37 (Claim No. 25-1).** The claim was filed for the estimated return for 2025 and will be paid as it comes due in the ordinary course of business.

**2-3 Texas Commission on Environmental Quality has a claim in the estimated amount of $109.08 (No Claim Filed).** This claim for Account 0300099N will be paid in full on or before the Effective Date of the Plan.

9

**2-4 Texas Commission on Environmental Quality has a claim in the estimated amount of $970.20 (No Claim Filed).** This claim for Account 0300099G will be paid in full on or before the Effective Date of the Plan.

**Class 3 Claimant** **Priority Tax Claims (This Claim is unimpaired)** Allowed Priority Claims are for estimated tax returns. This claim is secured, and the amounts are based on estimated returns and will be paid on the effective date as to the actual amount owed. The following class contains Debtor's estimated tax priority claim for pre-petition estimated amounts and the proposed treatment under the Plan:

**3-1 Internal Revenue Service has a claim in the amount of $113,417.90 (Proof of Claim 11-1).** This claim is for the unsecured priority amount of $102,919.98 which will be paid at 8.50% over 60 equal monthly payments at $2,111.55 per month. In the event Debtor files the unfiled 2025 WT-FICA return than the IRS shall file an amended proof of claim and the monthly payment shall be adjusted accordingly.  The unsecured portion of this claim in the amount of $10,497.92 shall be treated in Class 6 of this Plan.

**Class 4 Claimant – Secured Claim (This claim is impaired)** Allowed Secured Claim are secured by property of the Debtor's bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claim under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtor's secured pre-petition claim and the proposed treatment under the Plan:

**4-1 Leaf Capital Funding, LLC (Claim No. 21-1)** claim in the amount of $388,419.26 is secured by a Receptacle, Plug Insert, Cartridge heater, Injection Moulding Machine, Nomad WH150, Modular dual Tube Take Off MDT compartment, cavity mold RT-BC0010-092U-2, cavity mold RT-BC0010-092U-2 and all attachments.  Debtor proposes to pay the value of the equipment in the amount of $167,000.00 at 8.50% over 5 years in 60 equal monthly payments at $3,426.26 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The undersecured portion of this claim in the amount of $221,419.26 shall be treated in Class 6 of this Plan.

**4-2 Pawnee Leasing Corporation (Claim No. 4-1)** claim in the amount of $128,349.95 is secured by a Subminiature Composite 90-degree EMI Backshell with packaging system. Debtor proposes to pay the value of the equipment in the amount of $85,000.00 at 8.50% over 5 years in 60 equal monthly payments at $1,743.91 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The undersecured portion of this claim in the amount of $43,349.95 shall be treated in Class 6 of this Plan.

**4-3 Triton Capital (No Claim Filed)** claim in the amount of $187,338.50 is secured by commercial equipment. Debtor proposes to pay the value of the equipment in the amount of $95,000.00 at 8.50% over 5 years in 60 equal monthly payments at $1,949.07 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The undersecured portion of this claim in the amount of $92,338.50 shall be treated in Class 6 of this Plan

<u>**Class 5 Claimant**</u> **– Secured Claim (This claim is impaired)** Allowed Secured Claim are secured by property of the Debtor's bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claim under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtor's secured pre-petition claim and the proposed treatment under the Plan:

**5-1 ODK Capital LLC (Claim No. 16-1)** claim in the amount of $230,769.00 is secured by a blanket lien on all assets of the Debtor per the UCC Lien filed on February 23, 2024 which places this claim in lien Position 1. Debtor proposes to pay the secured liquidation value of the assets in the amount of $230,769.00 at 8.50% over 5 years in 60 equal monthly payments at $4,734.58 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**5-2 Mulligan Funding LLC (Claim No. 2-1)** claim in the amount of $214,252.00 is secured by a blanket lien on all assets of the Debtor per the UCC Lien filed on February 29, 2024 which places this claim in lien Position 2. Debtor proposes to pay the secured liquidation value of the assets in the amount of $214,252.00 at 8.50% over 5 years in 60 equal monthly payments at $4,395.71 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**5-3 Arcadia Funding Partners LLC (Claim No. 34-1)** claim in the amount of $263,519.50 is secured by a blanket lien on all assets of the Debtor per the UCC Lien filed on March 6, 2024 which places this claim in lien Position 3. Debtor proposes to pay the secured liquidation value of the assets in the amount of $263,519.50 at 8.50% over 5 years in 60 equal monthly payments at $5,406.51 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**5-4 Apex Funding Silver LLC (Claim No. 33-1)** claim in the amount of $70,452.00 is secured by a blanket lien on all assets of the Debtor per the UCC Lien filed on June 6, 2024 which places this claim in lien Position 4. Debtor proposes to pay the secured claim in full at 8.50% over 5 years in 60 equal monthly payments at $1,445.43 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**5-5 Throttle Funding LLC (Claim No. 27-1)** claim in the amount of $311,268.48 is secured by a blanket lien on all assets of the Debtor per the UCC Lien filed on June 20, 2024 which places this claim in lien Position 5. Debtor proposes to pay the secured liquidation value of the assets in the amount of $102,405.15 at 8.50% over 5 years in 60 equal monthly payments at $2,101.20 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The remaining under secured amount of $208,863.33 will be treated in Class 6 of this Plan

**Class 6 Claimants -- (Allowed Impaired Unsecured Claims)** are impaired and shall be satisfied as follows: All allowed unsecured creditors shall receive a pro rata distribution at zero percent per annum over the next five (5) years beginning not later than the 1st day of the first full calendar month following 30 days after the effective date of the plan and continuing every year thereafter on a monthly basis at 0.00% per annum. Debtor will distribute $350,500.00 to the general allowed unsecured creditor pool over the 5-year (5) year term of the plan, includes the under-secured claim portions.  The Debtor' General Allowed Unsecured Claimants will receive 22.48% of their allowed claims under this plan.  See below table for breakdown of distributions of the General Allowed Unsecured Claims:

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 22.48% of Total Claim |
|---|---|---|
|  |  |  |
|  |  | $9,488.01 |
| Accu-Labs | $42,204.21 |  |
|  |  | $12,887.72 |
| AFCO Direct | $57,326.70 |  |
| Analytical Enviroment Laboratory LLC | $42.50 | $9.55 |

12

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 22.48% of Total Claim |
|---|---|---|
| | | $1,297.14 |
| Andwin Scientific | $5,769.88 | |
| Aquatic Services | $1,000.00 | $224.81 |
| Asterion, LLC | $5,094.05 | $1,145.20 |
| Bank Direct Capital Finance | $84,937.28 | $19,094.91 |
| Basham Construction | $5,250.00 | $1,180.26 |
| Caplugs | $291.16 | $65.46 |
| Centerpoint Energy - 088 | $977.48 | $219.75 |
| Centerpoint Energy -429-9 | $4,556.11 | $1,024.27 |
| Coburn's Wholesale | $1,693.96 | $380.82 |
| Cole Parmer Instrument Co | $33.17 | $7.46 |
| Colonial Supplemental Insurance | $2,084.58 | $468.64 |
| Consolidated Communications | $11,447.00 | $2,573.42 |
| Consolidated Communications | $558.05 | $125.46 |
| Constellation New Energy, Inc. | $164,339.70 | $36,945.51 |
| Corner Stone Rack & Tooling | $5,999.00 | $1,348.65 |
| Dakota Maverick | $8,262.93 | $1,857.60 |
| Davisat | $533.75 | $119.99 |
| Daytona Funding Solutions Corp | $13,567.08 | $3,050.04 |
| DirectTV | $130.24 | $29.28 |
| Dun & Bradstreet Owner Services | $1,622.67 | $364.80 |

13

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 22.48% of Total Claim |
|---|---|---|
| Elliot Electric Supply | $923.60 | $207.64 |
| Engineered Products & Services, Inc. | $91,038.10 | $20,466.44 |
| Entech Resins | $79.25 | $17.82 |
| Estes Express Lines | $2,002.49 | $450.18 |
| Evoqua Water Technologies LLC | $875.00 | $196.71 |
| Fastenal | $306.20 | $68.84 |
| Fed Ex Freight East | $26,376.99 | $5,929.86 |
| Federal Processing Registry | $599.00 | $134.66 |
| FedEx | $329.37 | $74.05 |
| Ferrara's Heating & A/C | $25,120.05 | $5,647.28 |
| Fisher Scientific Co | $7,714.87 | $1,734.39 |
| Grainger | $3,186.09 | $716.27 |
| Hawkins Chemistry Equipment Services | $3,252.14 | $731.12 |
| Heniff Transporation Systems, LLC | $7,458.15 | $1,676.68 |
| Hi Line | $313.62 | $70.51 |
| Home Depot | $2,074.35 | $466.34 |
| Industrial Netting | $861.76 | $193.73 |
| Internal Revenue Service | $10,497.92 | $2,360.06 |
| IONOS Inc. | $75.60 | $17.00 |
| July Business Services | $4,106.58 | $923.21 |

14

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 22.48% of Total Claim |
|---|---|---|
| Laird Technologies - Cleveland | $1,978.71 | $444.84 |
| LBA Technologiies | $1,039.50 | $233.69 |
| Leaf Capital Funding | $221,419.26 | $49,777.67 |
| Lehman's Pipe & Steel | $8,803.41 | $1,979.11 |
| Lone Wolf | $6,572.80 | $1,477.64 |
| Lufkin Fasteners Inc. | $72.81 | $16.37 |
| Lufkin Rubber & Gasket | $1,585.63 | $356.47 |
| Lyons LP Gas | $514.90 | $115.76 |
| MacDermid Inc. | $87,344.68 | $19,636.12 |
| Matheson Tri-Gas Inc. | $5,494.78 | $1,235.29 |
| McMaster-Carr Supply Co | $6,808.97 | $1,530.74 |
| Met-Chem | $1,440.00 | $323.73 |
| MG Chemicals, LTD | $18,570.70 | $4,174.91 |
| MidAmerica Waste Solutions | $3,591.00 | $807.30 |
| Orkin Pest Control | $1,375.00 | $309.12 |
| Parker-Hannifin | $1,375.00 | $309.12 |
| Pawnee Leasing Corp | $43,349.95 | $9,745.58 |
| Pencom | $487.50 | $109.60 |
| Perkin Elmer | $11,647.00 | $2,618.38 |
| Perkin Elmer US LLC | $11,647.00 | $2,618.38 |

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 22.48% of Total Claim |
|---|---|---|
| Plastic Process Inc. | $134.87 | $30.32 |
| PPG Industries, Inc. | $15,855.41 | $3,564.48 |
| PPS Technologies | $580.00 | $130.39 |
| Precision Fasteners Inc. | $1,614.73 | $363.01 |
| Redbird Chemical | $13,871.98 | $3,118.59 |
| Ritter Lumber Lufkin | $2,554.04 | $574.18 |
| Ronningen Research and Development | $66,730.82 | $15,001.88 |
| Sam's Club | $155.00 | $34.85 |
| Sherwin Williams | $217.16 | $48.82 |
| SHHP Products, Inc. | $10,387.77 | $2,335.29 |
| Speedy Funding | $25,483.24 | $5,728.93 |
| Summit Companies | $3,464.47 | $778.85 |
| Tektronix | $6,326.52 | $1,422.28 |
| Texas Document Solutions | $241.74 | $54.35 |
| TForce Freight | $322.03 | $72.40 |
| Throttle Funding LLC | $208,863.33 | $46,954.95 |
| Todd, Hamaker & Johnson, LLP | $25,089.00 | $5,640.30 |
| Triton Capital | $92,338.50 | $20,758.79 |
| Truss & Son Plumbin | $827.83 | $186.11 |
| Uline | $366.48 | $82.39 |

16

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 22.48% of Total Claim |
|---|---|---|
| Univar USA Inc | $14,406.07 | $3,238.66 |
| US Ecology Livonia, Inc. | $12,349.01 | $2,776.20 |
| Vernier Sales, Inc. | $1,950.00 | $438.38 |
| Waste Management Industrial | $9,337.46 | $2,099.17 |
| Williams Electric | $5,206.83 | $1,170.56 |
| Wrike | $376.08 | $84.55 |
| Totals: | $1,559,081.60 | $350,500.00 |

**Class 7 – Lease Claim – Tempus Lufkin LLC filed a claim** (Claim No.28-1) in the amount of $459,932.96 to cure the pre-petition lease amounts owed. Debtor will pay this claim in full over 60 equal monthly payments at 8.50% at $9,436.23 per month beginning 30 days after the Effective Date of this Plan.

**Class 8 Equity Interest Holders (Current Owners)** are not impaired under the Plan and shall be satisfied as follows: The current owners will receive no payments under the Plan; however, they will be allowed to retain ownership in the Debtor. Class 6 Claimants are not impaired under the Plan.

### Class 9 Claimant Secured Claimant of CFP

(a)     Classification: Class 1 consists of CFP's Allowed Secured Claim, which Claim, notwithstanding the definition of the terms "Allowed" when used in respect to a "Claim" shall be deemed Allowed in the amount of $117,226.96 as of May 7, 2025.

(b)     Impairment and Voting: Class 9 is impaired by this Plan and is entitled to vote to accept or reject this Plan.

(c)     Post-Confirmation Terms. CFP's rights and the Debtor's and Reorganized Debtor's duties under the Post-Petition Agreements shall include each of the following:

Prior to the filing of the Petition, the Debtor and CFP, entered into a Master Purchase and Sales Agreement ("**Factoring Agreement**") as amended and supplemented by a Post-Petition Chapter 11 Bankruptcy Rider to Factoring Agreement ("**Rider**"). CFP caused to be filed a UCC-

17

1 Financing Statement with the Texas Secretary of State on December 13, 2021, which was assigned File No. 21-0055173832. Contemporaneously, Bobby Marshall as Guarantor, executed a personal Limited Guarantee in favor of CFP, and individually, absolutely and unconditionally guaranteed to CFP, the payment and performance of all obligations and liabilities owing to CFP by the primary obligor, the Debtor, arising under the Factoring Agreement. Pursuant to the Bankruptcy Court's Final DIP Financing Order, the Court approved the stipulations including, but not limited to: (i) CFP holds an unavoidable, duly perfected first priority ownership interest in prepetition Purchased Accounts (as defined in the Factoring Agreement) and an unavoidable, duly perfected first priority security interest in the Collateral, including, but not limited to any non-Purchased Accounts that serves to secure CFP's prepetition Secured Claim arising under the Factoring Agreement. *See Final DIP Financing Order (D.E. 57 at p. 2).*

Pursuant to and as authorized by the Bankruptcy Court's Final DIP Financing Order, CFP was granted, among other things, a duly perfected first priority ownership interest in all Accounts that CFP purchased from the Debtor, post-petition, and a duly perfected first priority security interest in all assets of the Debtor acquired after the Petition Date, including but not limited to, all Accounts, including non-Purchased Accounts, which security interest secures any now existing and hereafter arising Post-Petition Obligations (as defined in the Final DIP Financing Order) owing by the Debtor to CFP in accordance with the Factoring Agreement.

Pursuant to the Rider, the following constitutes an Event of Default under the Post-Petition Agreements, if, "all post-petition Obligations due the Factor are not repaid in full, without setoff, recoupment or deduction, by no later than the earlier of conversion or dismissal of the chapter 11 case, or, the effective date of any confirmed Plan, unless the Factor agrees to and consents, in writing, to other treatment under a Plan." The Debtor has notified CFP that the Debtor will be financially unable to repay all obligations owing to CFP, in full, upon confirmation of the Plan, and in order to induce CFP to consent to the Plan, the Debtor has agreed to preserve for the benefit of CFP, and to grant to CFP, each of the following rights post-confirmation:

(i)     All existing and hereafter arising rights and interests granted to CFP, and all monetary obligations and non-monetary obligations owed and hereafter owing to CFP by the Debtor and the Reorganized Debtor under and in respect to the Factoring Agreement and all rights granted to CFP under the Final DIP Financing Order: (a) shall be and are hereby assumed, ratified and acknowledged, and approved without any modification or further Court approval, and (b) shall at all times be fully preserved, and shall remain in full force and effect post-confirmation and fully binding on the Debtor and the Reorganized Debtor and all parties-in-interest of the Debtor and the Reorganized Debtor.

(ii)    Upon entry of a Confirmation Order, the Reorganized Debtor and CFP will continue to operate, post-confirmation, pursuant to the Factoring Agreement.

(iii)   The Final DIP Financing Order shall remain in full force and effect, post-confirmation, however, notwithstanding, CFP shall not be required to comply with certain provisions specific to the post-petition bankruptcy, including, but not necessarily limited to, section 12 (related to any requirement that CFP seek stay relief prior to exercising its rights after an Event of Default under the Factoring Agreement and cure period) and section 21 (reimbursement of any attorney's fees

18

and costs incurred by CFP shall be governed post-confirmation solely by the terms of the Factoring Agreement).

(iv)   After confirmation of the Plan, the following interests granted to CFP shall be fully preserved post-confirmation to secure any now existing and hereafter arising monetary obligations and non-monetary obligations owing to CFP by the Debtor and/or the Reorganized Debtor arising under the Factoring Agreement: (a) the first priority ownership interest in all Purchased Accounts (as defined by the Factoring Agreement) and (b) first priority security interest, Liens and interests recognized or granted to CFP in any collateral (as defined in the Factoring Agreement and/or the Final DIP Financing Order), and (c) all rights granted to CFP in respect to any supporting obligations (as such term is defined in the Uniform Commercial Code), including any guarantor.

(v)    In the event the Debtor, the Reorganized Debtor, and/or any Guarantor defaults under the Factoring Agreement and/or the Plan, CFP shall be entitled to exercise and enforce all rights and remedies, under the and in respect to the Factoring Agreement, and the Plan under applicable state law, free of any injunction under 11 U.S.C. § 524(a), or otherwise.

(vi)   The Bankruptcy Court will retain exclusive jurisdiction to interpret and enforce the Plan, subject only to the bankruptcy court electing to decline to exercise jurisdiction or abstains, in which event any state or federal court sitting in Palm Beach County, Florida or in CFP's sole discretion, any other state or federal courts that has jurisdiction over the parties ("Acceptable Forums"), shall have jurisdiction to enforce to the terms of the Plan. Notwithstanding the foregoing,  any courts in any of the Acceptable Forums shall have concurrent jurisdiction over the parties to adjudicate any claim, dispute and/or controversy related to and/or arising under the Factoring Agreement, and the Debtor, the Reorganized Debtor and any CFP Guarantor each waive any right to contest the court's personal jurisdiction over the parties or venue.  The Debtor and Reorganized Debtor each agree that the Acceptable Forums are convenient to each submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction or venue.

(vii)  Notwithstanding anything to the contrary, in the event of an express conflict between the terms of the Final DIP Financing Order on the one hand, and any plan, including this Plan, the Confirmation Order, or any authorizing amendment or modification to the Plan, on the other hand, the Final DIP Financing Order will control.

(viii) After the Confirmation Date or Effective Date, whichever is earliest, the Debtor and/or Reorganized Debtor, on the one hand, and CFP, on the other hand, shall be entitled by written agreement to modify the terms of the Factoring Agreement without having to obtain authorization from the Bankruptcy Court or any order of Court authorizing a modification of the Plan. Nothing contained in this Plan shall effect CFP's rights to exercise any of CFP's rights under the Factoring Agreement, or any other agreement between the parties.

(ix)   The Debtor acknowledges and agrees that no order may be entered in the Bankruptcy Case that modifies, enjoins, impairs, interferes with, or adversely impacts any of CFP's rights and/or the Debtor's (and the Reorganized Debtor's) monetary and non-monetary obligations to CFP under and with respect to the

19

Factoring Agreement and the Final DIP Financing Order except expressly as provided herein.

(x) The following provisions contained in this Plan to the extent inconsistent with this section, are inapplicable to CFP, including <u>Article VIII.d  and Article XV (discharge)</u>, <u>Article VIII.e (injunctions) and Article XI (retention of jurisdiction), Article XIII (executory contracts), Article XIV (events of default).</u>

In light of the foregoing, upon Confirmation of the Plan, the Reorganized Debtor and CFP shall be entitled to continue to conduct business pursuant to the terms of the Factoring Agreement; specifically, the Reorganized Debtor shall continue to offer to sell Accounts to CFP, which upon purchase by CFP shall constitute Purchased Accounts, in exchange for purchase price advances from CFP which shall be deemed sold in accordance with and subject to the terms of the Factoring Agreement.

# ARTICLE VII
## CLAIMS OBJECTION PROCESS

### Claims Bar Date.

The Bar Date for all creditors or interest holders, other than governmental units, to file proofs of claim with the Bankruptcy Clerk was May 16, 2025. The Bar Date for governmental units to file Proof of Claims with the Bankruptcy Clerk is not later than 180 days from petition date.

### Effect of Bar Date.

In accordance with Bankruptcy Rule 3003(c), any entity, Person or Creditor whose Claim was listed in the Schedules, or holds  a Contingent Claim, Unliquidated Claim, or Disputed Claim, and did not file a proof of Claim before the Bar Date, shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

### Standing.

Following the Effective Date, the Debtor shall have standing to object to Claims.

### Objection Deadline.

Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Debtor may File with the Bankruptcy Court objections to Claims and Equity Interests and shall serve a copy of each such objection upon the holder of the Claim or Equity Interest to which such objection pertains ("Disputed or Undetermined Claim"). Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any

Disputed or Undetermined Claim may be litigated to Final Order. The Debtor may compromise and settle any Disputed or Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed or Undetermined Claim after the Effective Date.

### Allowance of Claims.

At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Claim.

## ARTICLE VIII
## EFFECT OF CONFIRMATION OF PLAN AND INJUNCTION

A.     Effective Date and Notice.

The Effective Date of the Plan is the first business day following the date that is 30 days after the entry of the order confirming the Plan becomes final and non-appealable; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

On or before ten (10) Business Days after the occurrence of the Effective Date, the Debtor shall mail or cause to be mailed to all holders of Claims and Equity Interests a noticethat informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence ofthe Effective Date; and (c) such other matters that Debtor deem appropriate.

B.     Binding Effect of Plan.

Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtor, all Creditors, all Equity Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is  Impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan. This provision includes all successors and assigns of the parties named herein.

C.     Vesting of Assets.

Upon the Effective Date, all assets of the Estate shall vest in the Reorganized Debtor, except as otherwise provided in the Plan.

21

D.    Discharge.

    1.    Consensual Plan

A consensual plan is one in which the Debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraph (15), but including having all classes of creditors entitled to vote to accept the Plan. If Debtor' Plan is confirmed under § 1191(a), on the Effective Date of the Plan, Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. Debtor will not be discharged from any debt imposed by this Plan.

    2.    Non-consensual Plan

A non-consensual plan is one in which the Debtor has met all requirements of § 1129(a)of the Bankruptcy Code except for paragraphs (8), (10), and (15) of section 1129. In the event Debtor is unable to get all impaired classes of creditors to vote in favor of the Plan, Debtor will seek for the Court to confirm the Plan pursuant to § 1191(b) of the Bankruptcy Code. If Debtor' Plan is confirmed under § 1191(b), Debtor will receive a discharge by the Court upon completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. Debtor will not be discharged from any debt: (a) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or (b) expected from discharge under § 523 (a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

E.    Injunction Against Interference with Plan.

Upon the Effective Date, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the  Plan. Additionally, all holders of Claims, all holders of Equity Interest, and all other parties in interest in the Bankruptcy Case shall be enjoined from  seeking payment on their Claims or Interest except as otherwise provided in the Plan from Debtor.

F.    Payments under the Plan.

Regardless if the Debtor confirms the Plan pursuant to § 1191(a) or (b) of the Bankruptcy Code, Debtor shall make all payments required under the Plan directly to the creditors of the Estate once the creditors' claim becomes an Allowed Claim. Debtor asserts that cause exists to allow the Debtor to make all Plan payments as this will reduce administrative costs and provide assurance the Debtor is better able to monitor and maintain its cash flows.

## ARTICLE IX
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the continued operations of the business to fund the Plan.

## ARTICLE X
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "B". The Debtor believes that the projections are accurate based upon the accounts receivable and the work currently on the books. Based upon the projections, the Debtor believe the Plan to be feasible.

## ARTICLE XI
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE XII
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor' Plan is not confirmed, the Debtor' bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtor owes approximately $45,000.00 in administrative claims. Claims to the administrative creditors must be paid prior to the unsecured creditors receiving any payment. The amount owed to the unsecured creditors is approximately **$1,559,081.60**. The Debtor' assets include funds in the bank, office equipment, inventory, and accounts receivable. Unsecured creditors are receiving 22.48% of their claim under the terms of the Plan.

A liquidation analysis is attached hereto as Exhibit "A".

## ARTICLE XIII
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected.

23

## ARTICLE XIV
## EVENTS OF DEFAULT AND EFFECT THEREOF

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Reorganized Debtor to make a payment or maintain the required insurance as to all Collateral to a creditor pursuant to the terms of this Plan shall be an event of default as to such payments or the maintaining of insurance, if the payment or lack of insurance is not cured within ten (10) days after mailing written notice of default from such creditor to the Reorganized Debtor. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

> Robert "Chip" Lane
> The Lane Law Firm
> 6200 Savoy Drive
> Suite 1150
> Houston, Texas 77036-3300

The Debtor will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated without further notice or order from the Court.

## ARTICLE XV
## DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE XVI
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against either Debtor that arose prior to the Confirmation Date, unless such action is authorized by this Plan or 11 U.S.C. § 1141.

## ARTICLE XVII
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## ARTICLE XVIII
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor are unaware of any litigation which could be brought for the benefit of the creditors of the estate other than the litigation to collect pending accounts receivable.

Dated: September 5, 2025

Respectfully submitted,

Shieldcoat Technologies, Inc.

By: */s/Bobby Marshall*
Bobby Marshall, Owner

*/s/Robert C. Lane*
Robert C. Lane
State Bar No. 24046263
notifications@lanelaw.com
A. Zachary Casas
State Bar No. 24097469
6200 Savoy, Suite 1150
Houston, Texas 77036
(713) 595-8200 Voice
(713) 595-8201 Facsimile
COUNSEL FOR DEBTOR

| | Gross Value on Petition Date | Current Gross Value | Asset Debts | Net Value | Lienholder |
|---|---|---|---|---|---|
| Cash | $0.00 | $119,131.25 | | $119,131.25 | |
| | | | | | |
| **ACCOUNTS RECEIVABLE** | | | | | |
| Accounts Receivaable | $449,906.00 | $385,250.00 | | $385,250.00 | |
| | | | | | |
| Raw Materials | $26,000.00 | $28,300.00 | | $28,300.00 | |
| | | | | | |
| **OFFICE FURNITURE/FIXTURES** | | | | | |
| Desks, Chairs, Filing Cabinets, Table, Resin Grinder, Computers, Monitors, Printers and Copier | $11,435.00 | $11,435.00 | | $11,435.00 | |
| | | | | | |
| **EQUIPMENT & MACHINERY** | | | | | |
| 2016 MT125 Mold Machine | $12,600.00 | $12,600.00 | | $12,600.00 | |
| 2017 Sepro 11 | $6,000.00 | $6,000.00 | | $6,000.00 | |
| 2020 US Air S125 | $7,800.00 | $7,800.00 | | $7,800.00 | |
| 2022 Arburg 370E - Mold Machines Leases | $0.00 | $0.00 | | $0.00 | |
| 2022 IDA - Leases | $0.00 | $0.00 | | $0.00 | |
| 2022 Stering NGX50 - Lease | $0.00 | $0.00 | | $0.00 | |
| 2022 Incoe 3214-BRA Heat Control | $2,200.00 | $2,200.00 | | $2,200.00 | |
| 2022 Mapco 100-20-3SC Scrubber | $20,800.00 | $20,800.00 | | $20,800.00 | |
| 2022 ACU-Gauge AG24-3-LT53 Test Equipment | $5,600.00 | $5,600.00 | | $5,600.00 | |
| 2022 Perkin Elmer N300 Test Equipment | $5,600.00 | $5,600.00 | | $5,600.00 | |
| 2013 RK Inc Cyber1 Decorative Automation Line | $105,000.00 | $105,000.00 | | $105,000.00 | |
| 1999 Fanuc P-100 Paint Rober (7) | $14,000.00 | $14,000.00 | | $14,000.00 | |
| RJ-2 Controllers | $7,000.00 | $7,000.00 | | $7,000.00 | |
| 2022 Fisher XDL240 Test Equipment | $8,400.00 | $8,400.00 | | $8,400.00 | |
| 2013 Mapco Scubber | $7,800.00 | $7,800.00 | | $7,800.00 | |
| 2003 Blasdel 950 IR Ovens | $1,200.00 | $1,200.00 | | $1,200.00 | |
| 1998 Deco Tools Maskwasher | $1,600.00 | $1,600.00 | | $1,600.00 | |
| 2000 Thieria VP48E Maskwasher | $1,600.00 | $1,600.00 | | $1,600.00 | |
| 2005 Thieria VP48G Maskwasher | $1,600.00 | $1,600.00 | | $1,600.00 | |
| 2013 Aldonex T-415-50CR Rectifier | $3,000.00 | $3,000.00 | | $3,000.00 | |
| 2013 Aldonex T-418-25CR Rectifiers | $3,000.00 | $3,000.00 | | $3,000.00 | |
| 2013 Aldonex T-409-15.0CR | $3,000.00 | $3,000.00 | | $3,000.00 | |
| 2013 Aldonex T-406-7.5CR | $3,000.00 | $3,000.00 | | $3,000.00 | |
| 2013 Aldonex T-408-15CR | $3,000.00 | $3,000.00 | | $3,000.00 | |
| 2005 New Holland SD12 Spind Dryer | $900.00 | $900.00 | | $900.00 | |
| 2005 New Holland SD13 Spind Dryer | $900.00 | $900.00 | | $900.00 | |
| 2008 Toyota Forklift | $1,800.00 | $1,800.00 | | $1,800.00 | |
| 2013 Parker PCW chiller | $4,200.00 | $4,200.00 | | $4,200.00 | |
| 2013 Walchem WCU Copper Controllers | $4,200.00 | $4,200.00 | | $4,200.00 | |
| 2023 Walchem WCU Copper Sensor | $2,030.40 | $2,030.40 | | $2,030.40 | |

| | | | | |
|---|---|---|---|---|
| 2013 RK Inc Process Tanks | $12,600.00 | $12,600.00 | | $12,600.00 | |
| 2013 RK inc Rinse Tanks | $7,799.00 | $7,799.00 | | $7,799.00 | |
| 2022 Process Tech T-6440-3-P1 Heaters | $7,799.00 | $7,799.00 | | $7,799.00 | |
| 2000 Mapco | $5,000.00 | $5,000.00 | | $5,000.00 | |
| 2010 LMI Pumps | $5,600.00 | $5,600.00 | | $5,600.00 | |
| 2000 Price Hoist | $2,000.00 | $2,000.00 | | $2,000.00 | |
| 2005 Price Hoist | $2,000.00 | $2,000.00 | | $2,000.00 | |
| 2022 RK inc Hoist | $8,400.00 | $8,400.00 | | $8,400.00 | |
| 2010 CM Chan Hoists | $750.00 | $750.00 | | $750.00 | |
| 2022 Titans TA-120-NG Makeup Air | $30,000.00 | $30,000.00 | | $30,000.00 | |
| 2000 JWI Filter Press | $3,100.00 | $3,100.00 | | $3,100.00 | |
| 2005 JWI Filter Press | $3,100.00 | $3,100.00 | | $3,100.00 | |
| 2000 Ingersol Rand SSR-EP100 Air Compressor | $1,000.00 | $1,000.00 | | $1,000.00 | |
| 2000 Ingersol Rand Dryer | $300.00 | $300.00 | | $300.00 | |
| 1995 Milacron VT-220-17 Mold Machine | $2,400.00 | $2,400.00 | | $2,400.00 | |
| 1995 Milacron VT-220-10 Mold Machine | $2,400.00 | $2,400.00 | | $2,400.00 | |
| 2000 Reznor Makeup Air Machines | $4,000.00 | $4,000.00 | | $4,000.00 | |
| 2000 Bob Johnson RO System | $1,200.00 | $1,200.00 | | $1,200.00 | |
| | | | | | |
| **INTERNET DOMAINS** | | | | | |
| Licenses | $1.00 | $1.00 | | $1.00 | |
| Customer Lists | $1.00 | $1.00 | | $1.00 | |
| INTERNET DOMAINS | $1.00 | $1.00 | | $1.00 | |
| | | | | | |
| **TOTAL** | **$824,622.40** | **$881,397.65** | **$0.00** | **$881,397.65** | |
| | | | | | |
| **Secured Claim** | | | | | |
| ODK Capital LLC | | | $230,769.00 | $650,628.65 | |
| Mulligan Funding LLC | | | $214,252.00 | $436,376.65 | |
| Arcadia Funding Partners Inc | | | $263,519.50 | $172,587.15 | |
| Apex Funding Silver LLC | | | $70,452.00 | $102,405.15 | |
| Throttle Funding LLC | | | $311,268.48 | $0.00 | |
| Speedy Funding LLC | | | $25,483.24 | $0.00 | |
| Daytona Funding Solutions Corporation | | | $13,567.08 | $0.00 | |
| | | | | | |
| **Remaining Amount Available for Unsecured Creditors** | | | $0.00 | $0.00 | |
| **Total Amount of Allowed General Unsecured Claims (includes the undersecured portions of the Schedule D secured creditors)** | | | | $1,559,081.60 | |
| | | | | | |

Ex. A Prodigal Living Page 36 of 37 25-90067

| Ordinary Income/Expense | Months 1-12 | Months 13-24 | Months 25-36 | Months 37-48 | Months 49-60 |
|---|---|---|---|---|---|
| **Revenue** | | | | | |
| Total Gross Revenue | $4,335,000.00 | $4,650,000.00 | $4,950,000.00 | $5,225,000.00 | $5,475,000.00 |
| Factoring Fees | $216,750.00 | $232,500.00 | $247,500.00 | $261,250.00 | $273,750.00 |
| **Net Revenue** | $4,118,250.00 | $4,417,500.00 | $4,702,500.00 | $4,963,750.00 | $5,201,250.00 |
| | | | | | |
| **Expenses** | | | | | |
| Employee Payroll(W-2) | $1,400,000.00 | $1,500,000.00 | $1,600,000.00 | $1,650,000.00 | $1,700,000.00 |
| Wokers Compensation | $36,000.00 | $42,000.00 | $48,000.00 | $54,000.00 | $60,000.00 |
| Office Rent/Lease | $636,000.00 | $655,080.00 | $674,732.40 | $694,974.37 | $715,823.60 |
| Utilities | $288,000.00 | $312,000.00 | $336,000.00 | $360,000.00 | $384,000.00 |
| Inventory Purchases | $720,000.00 | $792,000.00 | $864,000.00 | $960,000.00 | $1,056,000.00 |
| Freight | $48,000.00 | $60,000.00 | $60,000.00 | $72,000.00 | $84,000.00 |
| | | | | | |
| Repairs & Maintence | $120,000.00 | $180,000.00 | $216,000.00 | $240,000.00 | $252,000.00 |
| Postage & Shipping | $30,000.00 | $33,000.00 | $36,000.00 | $39,000.00 | $42,000.00 |
| Insurance | $180,000.00 | $180,000.00 | $180,000.00 | $180,000.00 | $180,000.00 |
| Office Supplies | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 |
| Computer Software & IT | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 |
| Warehouse Supplies | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 |
| Bank Service Charges | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 |
| Taxes | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 |
| Legal/Accounting Fees | $18,000.00 | $20,000.00 | $22,000.00 | $24,000.00 | $26,000.00 |
| Misc Business Expenses | $25,000.00 | $25,000.00 | $25,000.00 | $30,000.00 | $30,000.00 |
| | | | | | |
| Total Expense | ($3,628,000.00) | ($3,926,080.00) | ($4,188,732.40) | ($4,430,974.37) | ($4,656,823.60) |
| **Net Operating Income** | **$490,250.00** | **$491,420.00** | **$513,767.60** | **$532,775.63** | **$544,426.40** |
| **PLAN PAYMENTS** | | | | | |
| Claim | Months 1-12 | Months 13-24 | Months 25-36 | Months 37-48 | Months 49-60 |
| **Priority Claims** | | | | | |
| Texas Health & Human Services Commission | $298.00 | | | | |
| Texas Comptroller | $13,376.37 | | | | |
| Texas Commission on Environmental Quality | $109.08 | | | | |
| Texas Commission on Environmental Quality | $970.20 | | | | |
| Internal Revenue Service | $25,338.60 | $25,338.60 | $25,338.60 | $25,338.60 | $25,338.60 |
| | | | | | |
| **Secured Claims** | | | | | |
| Leaf Capital Funding LLC | $41,115.12 | $41,115.12 | $41,115.12 | $41,115.12 | $41,115.12 |
| Pawnee Leasing Corp | $20,926.92 | $20,926.92 | $20,926.92 | $20,926.92 | $20,926.92 |
| Triton Capital | $23,388.84 | $23,388.84 | $23,388.84 | $23,388.84 | $23,388.84 |
| | | | | | |
| ODK Capital | $56,816.52 | $56,816.52 | $56,816.52 | $56,816.52 | $56,816.52 |
| Mulligan Funding LLC | $52,748.52 | $52,748.52 | $52,748.52 | $52,748.52 | $52,748.52 |
| Arcadia Funding Partners LLC | $64,878.12 | $64,878.12 | $64,878.12 | $64,878.12 | $64,878.12 |
| Apex Funding Silver LLC | $17,345.16 | $17,345.16 | $17,345.16 | $17,345.16 | $17,345.16 |
| Throttle Funding LLC | $25,212.00 | $25,212.00 | $25,212.00 | $25,212.00 | $25,212.00 |
| | | | | | |
| **Lease Claim** | | | | | |
| Tempus Lufkin LLC | $113,234.76 | $113,234.76 | $113,234.76 | $113,234.76 | $113,234.76 |
| | | | | | |
| **Allowed General Unsecured Claims** | | | | | |
| Unsecured Claims to Receive 22.48% | $34,250.00 | $50,000.00 | $72,250.00 | $91,250.00 | $102,750.00 |
| | | | | | |
| **Annual Plan Payment** | $490,008.21 | $491,004.56 | $513,254.56 | $532,254.56 | $543,754.56 |
| | | | | | |
| **Projected Disposable Income** | **$241.79** | **$415.44** | **$513.04** | **$521.07** | **$671.84** |

EXHIBIT B